UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HAIDER SALAH ABDULRAZZAK,<br><br>Plaintiff,<br><br>vs.<br><br>BRENT FLUKE, WARDEN AT MIKE DURFEE STATE PRISON, and ATTORNEY GENERAL FOR THE STATE OF SOUTH DAKOTA,<br><br>Defendants. | 4:19-CV-04025-RAL<br>4:19-CV-04075-RAL<br><br><br>OPINION AND ORDER GRANTING MOTIONS TO DISMISS |

I.  **Claims and Procedural History**

In 19-CV-4025, Petitioner Haider Salah Abdulrazzak (Abdulrazzak) filed a Petition under 28 U.S.C. § 2254, challenging his conviction after a jury trial in state court of 14 counts of possession of child pornography and his sentence thereon. 19-CV-4025, Doc. 1. Specifically, Abdulrazzak contends in grounds one and two of his petition that his trial counsel provided ineffective assistance of counsel in not filing a motion to suppress statements Abdulrazzak made, particularly because Abdulrazzak's native language is Iraqi Arabic and not English. Id. In ground three, Abdulrazzak contends that he did not understand the Egyptian Arabic language translator at trial and thereby was deprived of his Sixth Amendment rights. Id. Ground four of the petition contends that Abdulrazzak's trial counsel failed to investigate potential alibi evidence of Abdulrazzak not being near his computer when at least two of the pornographic images were

1

downloaded. Id. Abdulrazzak had appealed his conviction and sentence, which were summarily affirmed by the Supreme Court of South Dakota. 19-CV-4025, Doc. 1-6.

Abdulrazzak previously had filed a state court habeas corpus petition and amended petition; the amended petition filed in his prior state court habeas corpus action raised as its first four grounds the same grounds listed in his federal § 2254 petition in 19-CV-4025, Doc. 1. See 19-CV-4025, Doc. 1-7. State Circuit Court Judge Joseph Neiles denied Abdulrazzak habeas corpus relief after an evidentiary hearing and declined to issue a certificate of appealability. Id. at Doc. 1-7, 1-9.

Upon Abdulrazzak's filing of his federal habeas action in 19-CV-4025, this Court screened the petition and required a response. Id. at Doc. 7. Defendants filed a Motion to Dismiss the Application for Writ of Habeas Corpus, Doc. 8; attached documents thereto, Docs. 9-1 through 9-10; and arranged for filing of the state trial court records including transcripts and certain exhibits. This Court granted Abdulrazzak additional time to reply. Id. at Doc. 13. Abdulrazzak filed a lengthy response raising many assertions and arguments not framed by his federal § 2254 petition. Id. at Doc. 14. Abdulrazzak also filed a Motion for Evidentiary Hearing, in which Abdulrazzak requests both an evidentiary hearing and appointment of counsel. Id. at Doc. 15.

Abdulrazzak's second case in this Court, 19-CV-4075, involves a second separate petition under 28 U.S.C. § 2254 challenging a decision of the South Dakota Board of Pardons and Paroles revoking his parole. 19-CV-4075, Doc. 1. In ground one, Abdulrazzak contends a violation of his Fifth and Fourteenth Amendment rights related to his refusal to admit matters related to a treatment program. Id. In ground two, he contends that a basis for revoking parole was not supported by records or evidence. In ground three, he contends that the board arbitrarily and capriciously modified his conditions to make them harsher. Id.

This Court screened the petition in 19-CV-4075 and required an answer. Id. at Doc. 5. Abdulrazzak failed to file a timely notice of appeal to state circuit court from the Board's decision, so he has filed a Motion to Excuse/Waive of Exhaustion contending that state court exhaustion of his claims would be futile, id. at Doc. 4, as well as a Motion to Supplement Record, id. at Doc. 6. Defendants filed a Motion to Dismiss, id. at Doc. 7, and a supporting memorandum, id. at Doc. 8. Abdulrazzak opposes the motion to dismiss, id. at Doc. 12, and has filed a Motion for Evidentiary Hearing, id. at Doc. 13. Abdulrazzak very recently filed a Motion for Injunctive Order, id. at Doc. 14, seeking to be transferred to a "work release unit pending the outcome of the petition," id. at Doc. 14 at 1. For the reasons explained herein, this Court dismisses both cases, 19-CV-4025 and 19-CV-4075.

## II. Facts

In September of 2010, a grand jury in Minnehaha County, South Dakota, indicted Abdulrazzak on 14 counts of possession of child pornography in violation of SDCL § 22-24A-3. Abdulrazzak pleaded not guilty, and his case was tried to a jury in June of 2011.

Abdulrazzak's computer activity had triggered an investigation by Minnehaha County Sheriff's Department Detective Derek Kuchenreuther. Detective Kuchenreuther was assigned to the Internet Crimes Against Children division in the Minnehaha County Sheriff's Office. JT1 at 99.[1] As part of his duties to investigate child pornography on the internet, Detective Kuchenreuther uses investigatory software designed to search for internet protocol (IP) addresses that accessed child pornography. JT1 at 113. Upon finding an IP address identified as one downloading illegal content, Detective Kuchenreuther downloads files from that suspect IP address. Upon confirming

---

[1] This Court is using the citation method of "JT1" referring to volume one of the jury trial transcript which was provided to this Court with the respondent's answer in 19-CV-4025.

3

those files contain illegal content, Detective Kuchenreuther can use the IP address to determine the physical location of that computer. JT1 at 107.

On December 8, 2009, Detective Kuchenreuther identified an IP address offering a list of files containing terms consistent with child pornography. JT1 at 113–14. The terms included PTHC (which stands for preteen hard-core), Lolita (a common search term for child pornography), young little girls, eight yo, ten yo, and twelve yo (with "yo" standing for years old). The files from the IP address at issue produced pornographic images of young girls. JT1 at 116. Detective Kuchenreuther determined that the IP address at question was registered to Abdulrazzak and obtained a search warrant. JT1 at 107, 117–21.

Some weeks later, Detective Kuchenreuther went with other law enforcement officers to Abdulrazzak's apartment residence. JT1 at 121. After knocking on the door and receiving no answer, Detective Kuchenreuther entered the apartment through an unlocked balcony door. JT1 at 122. Eventually, Detective Kuchenreuther and law enforcement made contact with two residents of the apartment—Abdulrazzak and his roommate Akeel Abed. JT1 at 122. Law enforcement found a computer in each of the occupants' separate bedrooms. JT1 at 123. In Abdulrazzak's bedroom, law enforcement found an external hard drive, CDs, DVDs, and thumb drives as well. JT1 at 123. As a part of the execution of the search warrant, Detective Kuchenreuther operated equipment and software that allowed him to make an exact duplicate of the hard drive of Abdulrazzak's computer. JT1 at 108.

Detective Kuchenreuther conducted a forensic examination of both Abdulrazzak's and Abed's computers. That forensic examination generated information regarding the images, videos, dates, and time files created, as well as their location on the hard drives. JT1 at 110–11, 133. The examination of Abed's computer found no child pornography on it. JT1 at 123. The examination

of Abdulrazzak's laptop and external hard drive revealed that at some point in time that laptop contained a program called LimeWire. JT1 at 124. LimeWire is a free software available to the public and used to download and share files such as music, videos, and photographs. JT1 at 111–12.

Law enforcement interviewed Abdulrazzak in his apartment living room. JT1 at 126. Law enforcement explained that Abdulrazzak was not under arrest and did not have to speak with the officers. Doc. 1-7 at 5.[2] After being told why law enforcement was investigating child pornography downloaded from his IP address, Abdulrazzak admitted to using LimeWire to download pornography. JT1 at 129. Upon being asked what search terms he used, Abdulrazzak responded that he downloaded pornography by using "young movies" as a search term. JT1 at 129.

The forensic examination uncovered 34 images in unallocated space on the hard drive of Abdulrazzak's computer. JT1 at 132. Detective Kuchenreuther believed that the 34 images displayed prepubescent females based on the fact that the females depicted had "no breast development, no pubic hair, just small in stature." JT1 at 132. Abdulrazzak's external hard drive contained 299 images and 8 videos which had not been deleted. JT1 at 136. Detective Kuchenreuther believed that almost all of the images and videos contained child pornography. JT1 at 136.

Detective Kuchenreuther then met with prosecutors to discuss which images to charge Abdulrazzak as having in his possession. JT1 at 146–47. The prosecutor decided that Abdulrazzak

---

[2] Document 1-7 in this Court's CM/ECF record contains the factual findings of Judge Joseph Neiles, who conducted an evidentiary hearing on issues, such as voluntariness of Abdulrazzak's statements to law enforcement in his apartment.

would be charged with 14 counts of possession of child pornography. JT1 at 147. Five of those counts were based on images obtained from the unallocated space on the laptop.

Notwithstanding his statements to investigators, Abdulrazzak testified at trial that he never used a computer to view child pornography. JT2 at 64, 68. Abdulrazzak told the jury that his computer was not password protected. JT2 at 67. He testified that he had many visitors to his apartment and that he allowed them to use his computer. JT2 at 65–66. During the rebuttal case, however, a computer expert called by the prosecution testified that Abdulrazzak's computer was password protected. JT3 at 8. Moreover, the evidence established that Abdulrazzak was not a novice when it came to computers, with his own resume showing that he had "four years of computer programming experience." JT3 at 11–12.

The jury found Abdulrazzak guilty on all 14 counts of possession of child pornography. JT3 at 103–04. At sentencing, the Honorable Peter Lieberman observed "needless to say, these are images that are the most disturbing kind of images that I have dealt with in my professional capacity as a judge . . . . [I]n most of the images we have depictions, either videos or photographs, of very young children being raped. Orally raped, anally raped, vaginally raped." ST at 27.[3]

As stated above, Abdulrazzak appealed his conviction to the Supreme Court of South Dakota, which affirmed summarily. State v. Abdulrazzak, 828 N.W.2d 547 (S.D. 2013) (unpublished tabled decision). Abdulrazzak filed a state habeas corpus action raising the same four claims in his petition in 19-CV-4025, plus additional claims about alleged trial counsel deficiency such as failing to have a computer expert review the evidence. The assigned judge, Joseph Neiles, conducted an evidentiary hearing in September of 2016, and issued a written memorandum decision in March of 2017, with extensive findings of fact based on the evidentiary

---

[3] ST refers to the sentencing transcript that was provided to this Court.

6

hearing. Judge Neiles ultimately declined to issue a certification of probable cause to appeal from the denial of the state petition for writ of habeas corpus, and the Supreme Court of South Dakota likewise denied to take the appeal.

Abdulrazzak's sentence was a three-year state penitentiary sentence with two years suspended for 7 of the 14 counts of conviction, with those sentences to run consecutively. The sentencing judge, Judge Lieberman, did not pronounce sentence on the remaining seven counts. The State of South Dakota has a parole system and released Abdulrazzak on parole supervision on June 25, 2014. 19-CV-4075 at Doc. 8-2. Abdulrazzak apparently was on an Immigration and Customs Enforcement hold between his prison release on June 25, 2014, and until April of 2016. Id. at Doc. 8-2. A parole violation report dated October 27, 2016, described Abdulrazzak as "noncompliant in regards to his sex offender programming, [being] terminated from community-based sex offender programming," noting that Abdulrazzak "was in individual sex offender programming for 5 months and continued to deny his offense." Doc. 8-2. Abdulrazzak appeared to be under supervision on parole only from April of 2016 through October of 2016. On March 13, 2017, the Board of Pardons and Parole entered findings and conclusions determining that Abdulrazzak had violated his parole conditions. Id. at Doc. 8-3.

Abdulrazzak initiated an administrative appeal under SDCL § 1-26 to circuit court, asserting that the decision of the Board of Pardons and Parole was not supported by the record and that his due process rights had been violated. Id. at Doc. 8-5. Abdulrazzak served the Board of Pardons and Parole with notice of appeal on May 10, but did not file his notice of appeal with the state court until May 25, 2017. Id. at Docs. 8-6, 8-7. Because the notice of appeal was more than 30 days after service of the Board's final order, the Board moved to dismiss the appeal as jurisdictionally barred under SDCL § 1-26-31. The circuit court dismissed the appeal on that basis.

Id. at Doc. 8-8. Abdulrazzak then appealed to the Supreme Court of South Dakota. Id. at Doc. 8-9. The Supreme Court of South Dakota has not yet issued its ruling.

**A. Exhaustion Requirement**

Section 2254 of Title 28 allows a state inmate to file a federal court action to collaterally attack his conviction and sentence as contrary to the United States Constitution, but the inmate first must have exhausted through available state courts his Constitution-based claims for relief. Under § 2254, a federal court cannot grant a writ of habeas corpus to a "person in custody pursuant to the judgment of a State court," unless the "applicant has exhausted the remedies available in the courts of the State," or unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." Picard v. Connor, 404 U.S. 270, 276 (1971). The exhaustion requirement protects the state courts' role in enforcing federal law, allows state courts the opportunity first to correct possible constitutional defects in state court convictions, and prevents the potentially "unseemly" disruption of state judicial proceedings through premature federal court intervention. Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Under the framework established in Lundy, a federal district court may not issue the writ of habeas corpus in response to a "mixed" petition containing some exhausted claims and some unexhausted ones. Id. at 520.

To determine if a claim has been exhausted, a federal court must determine whether the petitioner fairly presented the issue to the state courts in a federal constitutional context. Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding." Id. "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard, 404 U.S. at 276. It is also not enough for the petitioner merely to assert facts necessary to support a federal claim or to assert a similar state-law claim. Ashker, 5 F.3d at 1179. The petitioner must present both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295, 297 (8th Cir. 1988). "The petitioner must refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Ashker, 5 F.3d at 1179 (citation omitted). This does not, however, require a petitioner to cite "book and verse on the federal constitution." Picard, 404 U.S. at 278. The petitioner must simply make apparent to the state court the constitutional substance of the constitutional claim. Satter, 977 F.2d at 1262.

Thus, this Court must first determine whether Abdulrazzak has exhausted the claims he raises in both 19-CV-4025 and 19-CV-4075. Abdulrazzak in fact raised the same four claims in state court that he now presses in his petition in 19-CV-4025; the amended petition filed in his

prior state court habeas corpus action raised as its first four grounds the same arguments contained in his federal § 2254 petition in 19-CV-4025, Doc. 1. See 19-CV-4025, Docs. 1, 1-7. Thus, Abdulrazzak has properly exhausted his claims in 19-CV-4025.

The same cannot be said regarding the claims in Abdulrazzak's § 2254 petition in 19-CV-4075, contesting his parole revocations proceedings. Abdulrazzak did not timely file a notice of appeal and still has pending to the Supreme Court of South Dakota a request for that court to consider the appeal. Abdulrazzak's failure to timely file a notice of appeal of the Board decision in state court is a procedural default that may bar a subsequent § 2254 petition under Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ."). Alternatively, the Supreme Court of South Dakota may consider the appeal or remand the matter to the circuit court for it to consider the appeal. In that case, there plainly is not exhaustion of state court proceedings regarding Abdulrazzak's claim of impropriety with the revocation of his parole. Either way, Abdulrazzak has not exhausted the claims that he seeks to make in 19-CV-4075, and those claims must be dismissed by this Court.

**B. Merits of § 2254 Claims in 19-CV-4025**

When a claim has been adjudicated on the merits in a state court as has Abdulrazzak's claims in 19-CV-4025, a petition for writ of habeas corpus under § 2254 cannot be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To show that a state court made an unreasonable determination of the facts, a petitioner must present clear and convincing evidence that "the state court's presumptively correct factual finding lacks evidentiary support." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) present distinct questions. Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 404–05 (2000)). A state court's legal determination is contrary to federal law if it reaches the opposite conclusion on a settled question of constitutional law, or if, when confronting materially indistinguishable facts as a case decided by settled federal case law, it reaches a different conclusion. Williams, 529 U.S. at 405. If a state court correctly identifies the controlling legal principle, but applies it to the facts of a case in an unreasonable manner, then the decision runs afoul of the "unreasonable application" clause of § 2254(d)(1). Id. at 407–08. "[A]n *unreasonable application of federal law is different from an incorrect application of federal law.*" Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). This is a "highly deferential standard" that is "difficult to meet." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Evaluation of a state court's application of federal law focuses on "what a state court knew and did . . . measured against [the Supreme] Court's precedents as of 'the time the state court rendere[ed] its decision.'" Id. at 182 (quoting Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003)). "If a claim has been adjudicated on the merits by a state court," a federal habeas petitioner must show the state court's legal determination was deficient "on the record that was before the state court." Id. at 185.

Abdulrazzak's claims in his § 2254 petition in 19-CV-4025 center around alleged ineffective assistance of counsel and inability to understand an interpreter. The Supreme Court of

11

the United States in Strickland v. Washington, 466 U.S. 668 (1984), set forth a two-part test for a petitioner to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. Both prongs of the Strickland test must be satisfied for a claim to succeed, and if a petitioner fails to make a sufficient showing under one prong, the court need not address the other. Id. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has noted that federal review of ineffective assistance claims in § 2254 petitions is to be particularly deferential. In Nooner v. Norris, 402 F.3d 801 (8th Cir. 2005), the Eighth Circuit stated: "[O]ur review under 28 U.S.C. § 2254 of a state court's application of Strickland is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." Id. at 808. In applying the Strickland standard, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Indeed, to establish that counsel's performance was objectively unreasonable, a petitioner must overcome the presumption that a challenged action of counsel might be considered "sound trial strategy." Mansfield v. Dormire, 202 F.3d 1018, 1022 (8th Cir. 2000) (quoting Strickland, 466 U.S. at 689). In short, under the Strickland standard, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Cullen, 563 U.S. at 189 (citation omitted). Defense counsel of course cannot be said to be ineffective simply for failing to perform acts which appear to be futile or fruitless at the time the

decision must be made. Holloway v. United States, 960 F.2d 1348, 1356 (8th Cir. 1992); Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994).

In order to establish prejudice under the Strickland standard, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 391 (citation omitted). That standard "requires a 'substantial,' not just 'conceivable' likelihood of a different result." Cullen, 563 U.S. at 189 (quoting Richter, 562 U.S. at 112).

All four of the grounds raised in Abdulrazzak's § 2254 petition in 19-CV-4025 have some element of ineffective assistance of counsel claimed. Grounds one and two of the petition allege ineffective assistance of counsel in not filing a motion to suppress statements Abdulrazzak made. Ground three contends that he did not understand his Arabic language translator at trial. Ground four alleges ineffective assistance in failing to investigate potential alibi evidence of Abdulrazzak not being near his computer when at least two pornographic images were downloaded. 19-CV-4025, Doc. 1. The claim of an inability to understand the translator at trial of course goes beyond ineffective assistance of counsel and implicates Sixth Amendment rights.

Judge Neiles conducted an evidentiary hearing and entered extensive findings of fact on Abdulrazzak's claims. There is nothing in the record to suggest that this Court should not defer to Judge Neiles's findings of fact. Indeed, the evidence before Judge Neiles was that, in Abdulrazzak's apartment, police officers told him that he was not under arrest and did not have to speak to the officers. Doc. 9-6. Abdulrazzak himself believed that he was told of not being under arrest and did not need to speak to the officers. Id. Abdulrazzak explained that he still spoke to the officers because refusing to speak to law enforcement in his home country of Iraq "would be

problematic." Id. Abdulrazzak explained that, even though he was told that he did not need to speak with law enforcement and was not under arrest, Abdulrazzak did not feel that he possessed that freedom. Id.

Counsel failing to file a motion to suppress Abdulrazzak's statement within his apartment is not ineffective assistance of counsel under the circumstances. The warning established in Miranda v. Arizona, 384 U.S. 436 (1966), only applies when a person is taken into custody for questioning. United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); United States v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007). A suspect is in custody when formally arrested or when that suspect experiences a deprivation of his freedom in a significant way. Griffin, 922 F.2d at 1347. Whether a suspect is in custody hinges upon whether a "reasonable person in the suspect's position would have understood his situation" to be one of custody; that is, the standard is an objective one. Id. Abdulrazzak was told and recalls that he was told that he was not under arrest and did not have to speak with the officers. Doc. 9-6. Judge Nieles concluded that Abdulrazzak did not experience a custodial interrogation and was not in custody. Under the deferential review of factual findings, this Court cannot conclude otherwise on this record. Under the Strickland standard, neither prong is met with regard to counsel's failure to file a motion to suppress. The motion to suppress would have been denied anyway, and the failure to file the motion does not indicate such a deficiency in the performance of counsel that he was not functioning as the counsel guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 687.

Abdulrazzak's claims about communication difficulty before and during trial do not find support in the record. Abdulrazzak's trial counsel testified in front of Judge Neiles that he did not experience issues communicating with Abdulrazzak in English and indeed did not need an interpreter in communicating with Abdulrazzak. Doc. 9-6. Abdulrazzak told his trial counsel

14

during trial that the interpreter was Egyptian, but counsel understood that Abdulrazzak mistrusted the interpreter based on his national origin, not that Abdulrazzak could not understand the translation into Arabic. Doc. 9-6. Judge Neiles concluded that Abdulrazzak failed to show that any misinterpretation between an interpreter and Abdulrazzak caused a constitutional error to arise. Doc. 9-6. Abdulrazzak has failed to show that his counsel was ineffective by not requesting a different interpreter. United States v. Dozal-Alvarez, 2011 WL 2670089, at *4 (D. Kan. July 7, 2011).

The final claim that Abdulrazzak makes of ineffective assistance of counsel relates to an alleged failure to investigate a potential alibi claim regarding the dates and times when certain child pornography was being accessed, downloaded, and viewed. In Abdulrazzak's state habeas corpus proceeding, Abdulrazzak made additional claims about ineffective assistance of counsel in failing to consult a computer expert. During the evidentiary proceeding in state court, it came out that Abdulrazzak's attorney had in fact consulted a computer expert who had examined Abdulrazzak's computer. Doc. 9-6. That expert determined that Abdulrazzak's computer was used to access pornography immediately upon Abdulrazzak's arrival to the United States. Id. The expert also found additional images of child pornography on Abdulrazzak's computer that law enforcement had overlooked. Id. Understandably, trial counsel made a tactical decision not to call that computer expert at trial. It is difficult to imagine introducing testimony that Abdulrazzak was not near his computer when certain images were downloaded without the use of such a computer expert. Counsel, of course, is afforded "wide latitude" in making tactical decisions. Cullen, 563 U.S. at 195 (citation omitted). Moreover, "[t]he decision not to call a witness is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citation omitted). Abdulrazzak cannot show that it was ineffective assistance of

counsel to choose not to attempt to establish through use of a computer expert or otherwise that Abdulrazzak could have been away from his computer when some of the child pornography was downloaded. Therefore, none of the grounds raised in Abdulrazzak's § 2254 petition in 19-CV-4025 are viable on their merits. Accordingly, the motion to dismiss should be granted.

### III.   Conclusion and Order

For the reasons explained above, it is hereby

ORDERED, ADJUGED AND DECREED that the Motion to Dismiss, Doc. 8, in 19-CV-4025 is granted. It is further

ORDERED that the Motion to Dismiss, Doc. 7, in 19-CV-4075 is granted as Abdulrazzak's claims in that case are not exhausted. It is further

ORDERED that Abdulrazzak's motions for evidentiary hearing, Doc. 13 in 19-CV-4075, Doc. 15 in 19-CV-4025, are denied. It is further

ORDERED that Abdulrazzak's motion to excuse/waive exhaustion, Doc. 4 in 19-CV-4075, is denied. It is further

ORDERED that Abdulrazzak's motion to supplement the records, Doc. 6 in 19-CV-4075, is granted to the extent that materials that Abdulrazzak has filed in the record are made part of this Court's CM/ECF record. It is finally

ORDERED that Abdulrazzak's Motion for Injunctive Order, Doc. 14 in 19-CV-4075, is denied.

DATED this 13th day of November, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE